UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHABAY BONNETT,

               Petitioner,

-against-                           **MEMORANDUM & ORDER**
                                            15-CV-6627 & 16-CV-1178

MICHAEL SHEHAN,

               Respondent.
------------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Petitioner Shabay Bonnett, appearing *pro se*, petitions this Court for two writs of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his guilty plea entered on January 22, 2013 in the Supreme Court of the State of New York, Richmond County. For the reasons set forth below, the two petitions are denied in their entirety.

## BACKGROUND

**I.    Facts**[1]

On July 26, 2011, Petitioner, Devon Cave, and Eddie Janis planned to rob Omar Coombs of marijuana. After Janis called Coombs several times to arrange a meeting, Petitioner and Cave approached the victim's house at 96A Debbie Street in Staten Island as Janis acted as a lookout. When Coombs exited the house, Petitioner approached Coombs, brandished what appeared to be a pistol, but was in fact a BB gun, and demanded Coombs's marijuana supply. A struggle ensued between Petitioner and Coombs. Petitioner then ran from the scene as Cave stabbed Coombs, who died from his injuries. (Dkt. 8, at 3.)[2]

---

[1] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[2] Unless otherwise noted, all docket entry numbers refer to the docket of case number 15-CV-6627. The page numbers refer to the document's internal pagination.

On February 3, 2012, New York City Police Department detectives assigned to the case, John Serdaros and Michael Cosenza, met with Witness One.[3] (H. 8-9.)[4] Witness One, accompanied by her parents, viewed a photo array. (H. 9.) She picked Petitioner's photo out of the array and stated that she "saw him approach Omar [Coombs]'s porch and house wearing a mask" on the day of the murder. (H. 16-17.) On February 8, 2012, Detectives Sedaros and Consenza met with Witness Five to view the same photo array. She too picked Petitioner's photo and stated that she recognized him "[f]rom 96A Debbie Street. He was the one peeking in the window." (H. 25, 31, 33-34.)

Petitioner was arrested on April 4, 2012. He gave post-arrest confessions in writing and on videotape. Petitioner was indicted on charges of one count of second-degree murder, one count of attempted first-degree robbery, two counts of attempted second-degree robbery, and one count of attempted third-degree robbery.

## II.     *Wade* **Hearing**

On August 1 and 7, 2012, Justice Stephen J. Rooney conducted a *Wade/Huntley*[5] hearing to resolve Petitioner's motion, *inter alia*, seeking suppression of the eyewitness identifications as unduly suggestive. The only witness at the hearing was Detective Serdaros, who testified to the events described above. (*See* Dkts. 7-1, 7-2.) On September 21, 2012, Justice Rooney denied Petitioner's motion, finding that "[i]t cannot be said that the photo arrays shown to witnesses One

---

[3] The witnesses' identities were the subject of a protective order in state court. (Dkt. 8, at 4.)

[4] "H." refers to the transcript of Petitioner's *Wade/Huntley* hearing on August 1, 2012. (Dkts. 7-1, 7-2.)

[5] A *Wade* hearing is a "motion to suppress identification." *Raheem v. Kelly*, 257 F.3d 122, 125 (2d Cir. 2001). A *Huntley* hearing is to determine "the voluntariness of a statement and of the waiver of any constitutional right." *Parham v. Griffin*, 86 F. Supp. 3d 161, 172 (E.D.N.Y. 2015).

2

and Five were suggestive," as "[t]he photo arrays contain[ed] pictures of individuals sufficiently similar in appearance to [Petitioner to] rule out any suggestiveness," "[t]he conduct of the police throughout the procedures was neutral," and "[t]he record indicates nothing was said or done to suggest that anyone in the arrays was the guilty party." (Dkt. 7-3, at 4.)

### III. Guilty Plea

On January 22, 2013, Petitioner agreed to plead guilty to attempted murder in the second degree and to implicate Cave in exchange for a sentence of 21 years' imprisonment and five years' post-release supervision. (P. 4-5, 14.)[6] During his plea colloquy, Petitioner replied "yes" when asked whether: (1) he understood the sentence that he was pleading to (P. 6-7); (2) he was satisfied with his lawyer's representation (P. 7); (3) he was pleading guilty because he was, in fact, guilty of causing Coombs's death "in the course of the commission and attempted commission of the felony of robbery" (P. 8); and (4) he was giving up his right to trial (P. 9). Petitioner also signed a written waiver and later affirmed orally that he was waiving his rights, including his right to appeal, "knowingly, voluntarily, and intelligently."[7] (P. 10.)

### IV. Sentencing

Petitioner's sentencing hearing was held on April 18, 2013. At the outset, the court was informed that Petitioner "refuse[d] to come up from the holding area downstairs for his sentencing." (S. 2.)[8] Defense counsel stated on the record that he had previously made a motion

---

[6] "P." refers to the transcript of Petitioner's plea hearing on January 22, 2013. (Dkt. 7-4.)

[7] However, included in the written waiver was the following language: "The undersigned executes this waiver *after* having been advised by the Court of the nature of the rights being waived." (Dkt. 7-7, at 7 (emphasis added); *see also* Dkt. 7-5.)

[8] "S." refers to the transcript of Petitioner's sentencing on April 18, 2013. (Dkt. 7-6.)

3

to withdraw Petitioner's guilty plea, but it was denied. (S. 2-3.)[9] He then stated that he told Petitioner "that he was going to be sentenced today," but Petitioner "told [him] that [he was] not going to get sentenced today" because "[he] didn't do this and [was] not coming up." (*Id.*) In response, the trial judge stated that he was not going "forcibly extract[] [Petitioner] from his cell," but was going to sentence Petitioner "in abstentia." (S. 4.) However, before he did so, the trial court had the clerk advise Petitioner that he had the right to be present at sentencing and make a statement. (S. 4-6.) Defense counsel also spoke privately with his client, but Petitioner again refused to attend the sentencing. (S. 6-7.) The court stated that it was "satisfied," after the court indicated that the sentencing would go forward, that "Mr. Bonnett [was] aware of his right to be present at the sentencing proceeding and that he has voluntarily waived that right." (S. 8.)

Once sentencing resumed, defense counsel made a record regarding Petitioner's guilty plea and the appropriateness of proceeding with the sentencing. Petitioner's counsel stated that Petitioner had agreed to the plea deal once the prosecution "remove[d] the life [sentence] component" because Petitioner "said a plea like this may be able to give [him] some life where, if [he] los[t] [at trial] . . . [he] could possibly spend the rest of [his] life in jail." (S. 13-14.) Defense counsel further stated that "[i]t was very clear" that when Petitioner agreed to the plea, "he understood what [the lawyers] were discussing" and that the court "did an appropriate allocution." (S. 14.) Additionally, defense counsel noted that there was a prior sentencing date set, but "[a]t that time[,] [Petitioner] indicated to [him that] he didn't understand what was happening, didn't understand that he pled guilty and that he was unintelligent to the fact that he knew what was going on." (*Id.*) As a result, defense counsel moved to withdraw Petitioner's guilty plea. (*Id.*) Counsel

---

[9] The transcript of the prior sentencing and plea withdrawal motion was not provided to this Court.

4

concluded by stating that there was "no reason, after [the court] has denied the motion, which was well within [the court's] discretion," that Petitioner should not be sentenced. (*Id*.) Defense counsel then read a statement from Petitioner, stating "I didn't fully understand the decision I was making when I took my plea. I would like the right to withdraw my plea and go to trial. I refuse to be sentenced to 21 years." (S. 15.) The court then imposed the agreed-upon sentence of 21 years' imprisonment and five years' post-release supervision. (S. 15-16.)

## V. Direct Appeal

Petitioner appealed his conviction to the New York State Appellate Division, Second Department. In his counseled brief, he argued that: (1) his appeal waiver was invalid because the court failed to inquire into his understanding of the waiver form before he signed it, and failed to specifically inform him that the waiver covered the right to appeal his sentence; and (2) his sentence was excessive. (Dkt. 7-7.) On February 4, 2015, the Appellate Division affirmed Petitioner's judgment of conviction. *People v. Bonnett*, 125 A.D.3d 683 (2015). The appellate court found that Petitioner's "valid waiver of his right to appeal precludes appellate review of his contention that the sentence imposed was excessive." *Id*. The Court of Appeals denied Petitioner leave to appeal the denial on April 23, 2015. *People v. Bonnett*, 25 N.Y.3d 988 (2015).

## VI. Instant *Habeas* Petition

On November 17, 2015, Petitioner timely filed a *habeas* petition against "Superintendent Michael Shehan." (15-CV-6627, Dkt. 1.) Respondent filed his opposition on January 21, 2016. (Dkt. 7-8.) On March 8, 2016, Petitioner filed a second *habeas* petition against Daniel M. Donovan, the District Attorney of Richmond County, and added new claims. (16-CV-1178, Dkt. 1.) On March 14 and 15, 2016, the Court consolidated the cases pursuant to Federal Rule of Civil Procedure 42(a). The Court also stayed both cases so that Petitioner could exhaust his state court

remedies; specifically, on July 29, 2015, Petitioner moved *pro se* to vacate the judgment of conviction pursuant to CPL § 440.10. That motion is still pending. Petitioner also filed a writ of error coram nobis in April 2018. (Dkt. 14.)

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may

not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)). Courts must "assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, No. 17-78-PR, 2018 WL 5985932, at *11 n.14 (2d Cir. Nov. 15, 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

Federal *habeas* review is further circumscribed when the challenged conviction is based on a guilty plea. "[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) (citation and internal quotation marks omitted); *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). Rather, "a person complaining of such antecedent constitutional violations, is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Blackledge*, 417 U.S. at 29-30 (citation and internal quotation marks omitted). With respect to ineffective assistance of counsel, a guilty plea waives only such claims "relating to events prior to the guilty plea that did not affect the

7

voluntariness of [petitioner's] plea." *Vasquez v. Parrott*, 397 F. Supp.2d 452, 463 (S.D.N.Y. 2005).

## DISCUSSION

The Court now lifts the stay and denies both of the pending *habeas* petitions, including Petitioner's exhausted and unexhausted claims, on the merits. Pursuant to 28 U.S.C. § 2254, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) ("A mixed petition should not be stayed indefinitely. . . . [D]istrict courts should place reasonable time limits on a petitioner's trip to state court and back."); *United States v. Santore*, No. 5:12-CR-8, 2016 WL 6778796, at *3 (D. Vt. Nov. 16, 2016).

Petitioner challenges his guilty plea on the following grounds: (1) his guilty plea was not knowing, intelligent, and voluntary as a result of his trial counsel's ineffective assistance, including counsel's failure to investigate the eyewitness identifications; (2) the plea colloquy was insufficient because he simply answered "yes" or "no" in response to the court's questions, without reciting the elements of the crime to which he pleaded guilty; (3) the identification evidence was legally insufficient because the eyewitness identifications conflicted with each other, thereby depriving him of due process; (4) his arrest was unlawful; and (5) his appellate counsel was ineffective.[10]

---

[10] Given the liberal standard that applies to *pro se* applications, the Court has construed the petition to state the strongest claims it reasonably can. *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation omitted).

**I. Petitioner's Guilty Plea Was Not Rendered Unknowing or Involuntary by Ineffective Assistance of Counsel**

Petitioner argues that his guilty plea was not knowing, intelligent, or voluntary due to his trial counsel's ineffective assistance. (16-CV-1178, Dkt. 1, at 8; 15-CV-6627, Dkt. 1, at 7.) The only defect Petitioner alleges with respect to his trial counsel's performance is that the attorney "did not properly challenge the identification procedures, specifically the photo arrays that [were] conducted." (16-CV-1178, Dkt. 1, at 7; *see also* 15- CV-6627, Dkt. 1, at 6-7.)

The voluntariness of a criminal petitioner's guilty plea is determined by considering the totality of the circumstances surrounding the entry of the plea, *Brady v. United States*, 397 U.S. 742, 757 (1970), including whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the petitioner," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Parke v. Raley*, 506 U.S. 20, 35-37 (1992). A court may ascertain that a defendant "knowingly" and "voluntarily" entered into the plea agreement from, *inter alia*, his allocution statements. *See United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). Therefore, statements made at a plea allocution carry a "strong presumption of veracity." *United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997) (citation omitted).

**A. Petitioner's Guilty Plea was Knowing and Voluntary**

As an initial matter, there is "no basis in the record for concluding that [Petitioner] lacked the requisite understanding [of his plea]." *United States v. Torrellas*, 455 F.3d 96, 104 (2d Cir. 2006). At the plea colloquy, Petitioner stated that he understood the sentence that: he was pleading to and that he wanted to so plead (P. 6-7); he was satisfied with his lawyer's representation (P. 7); and he was giving up his right to trial (P. 9). Petitioner also signed a written waiver and later orally confirmed that he knew he was waiving his right to appeal and that he was waiving his rights "knowingly, voluntarily, and intelligently." (P. 10.) Thus, on its face, the record demonstrates

that Petitioner voluntarily pled guilty with a full understanding of the rights that he was waiving by pleading guilty.

### B. Petitioner's Trial Counsel Was Not Ineffective

Petitioner, however, maintains that his guilty plea was involuntary because of his trial counsel's ineffectiveness with respect to "the identification procedures, specifically the photo arrays that [were] conducted." (16-CV-1178, Dkt. 1, at 7; *see also* 15-CV-6627, Dkt. 1, at 6-7); *see Blackledge*, 417 U.S. at 29-30 (challenge to conviction by guilty plea is "limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases") (citation and internal quotation marks omitted).

Under the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), to establish ineffective assistance of counsel, a *habeas* petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith,* 549 F.3d 583, 588 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 688). Even assuming *arguendo* that Petitioner could meet the first prong of *Strickland* with respect to his counsel's alleged failure to challenge the identification procedures, Petitioner cannot demonstrate prejudice. "In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider 'all the relevant evidence that the jury would have had before it' had the evidence been introduced, including unfavorable evidence." *Barnes v. Burge,* 372 F. App'x 196, 199 (2d Cir. 2010) (quoting *Wong v. Belmontes,* 130 S.Ct. 383, 386 (2009)) (per curiam). Given that, in addition to the eyewitness identifications, Petitioner made

written and videotaped statements confessing to his participation in the crime (*see* Dkt. 7-3), there is "no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, *i.e.*, that Petitioner "would not have pleaded guilty and would have insisted on going to trial," *Premo v. Moore*, 562 U.S. 115, 129 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Accordingly, Petitioner has not demonstrated that his guilty plea was not knowing or voluntary as a result of the ineffective assistance of his counsel.

## II. Petitioner's Other Claims

Although the Court's ruling regarding the voluntariness of Petitioner's guilty should end the inquiry, *see Blackledge*, 417 U.S. at 29-30, the Court addresses Petitioner's other arguments.

### A. Petitioner's Plea Allocution Was Sufficient

Petitioner contends that the plea colloquy was insufficient because he simply answered "yes" or "no" in response to the court's questions, without reciting the elements of the crime to which he pleaded guilty. (16-CV-1178, Dkt. 1, at 8; 15-CV-6627, Dkt. 1, at 7.) This claim is without merit.

"[T]here is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences." *Torrellas*, 455 F.3d at 103 (internal quotation marks omitted). During his plea hearing, Petitioner responded "yes" to the question about whether he was pleading guilty because he was, in fact, guilty of "caus[ing] the death of Omar Coombs" "in the course of the commission and attempted commission of the felony of robbery." (P. 8.) This was sufficient to establish his guilty of attempted murder in the second degree. *See* N.Y.

Penal Law § 125.25(3) ("A person is guilty of murder in the second degree when . . . [a]cting either alone or with one or more other persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant . . . causes the death of a person other than one of the participants").[11]

### B. Eyewitness Identifications and Unlawful Arrest

In addition to asserting that his trial counsel was ineffective in his handling of the eyewitness identifications, Petitioner also argues that the identification evidence was legally insufficient. (15-CV-6627, Dkt. 1 at 9.) This claim, however, is barred by Petitioner's guilty plea. *See Blackledge*, 417 U.S. at 29-30 ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.") (citation and internal quotation marks omitted).[12]

Petitioner's claim that his arrest was unlawful (16-CV-1178, Dkt. 1 at 8) is barred on the same grounds.

### III. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to raise the arguments that Petitioner raises in the instant *habeas* petitions. (16-CV-1178, Dkt. 1, at 8; 15-CV-6627, Dkt. 1, at 6-8.) To establish ineffective assistance of appellate counsel for failure to raise specific issues,

---

[11] Even if "Petitioner's plea colloquy lack[ed] a specific reference to . . . [an] element [of the crime], the record indicates that he understood the nature of the charged crime[.]" *Maltsev v. Albany Cty. Prob. Dep't*, 303 F. App'x 973, 974 (2d Cir. 2008) ("Although it is certainly preferable that the trial judge explain each element of the charge, federal law does not mandate that state courts conduct a particular interrogatory 'catechism' akin to that required of federal courts by Federal Rule of Criminal Procedure 11.") (internal quotation marks omitted).

[12] Even if not barred by Petitioner's guilty plea, his argument regarding the witness identifications are meritless. First, the two identifications do not conflict with one another, as Petitioner claims. Second, Petitioner offers no other evidence suggesting that the photo array procedures used by the investigators was improper in any way.

"it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Because, as discussed above, Petitioner's underlying claims fail *de novo*, he cannot meet the "substantially higher threshold" to demonstrate ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## CONCLUSION

For the reasons set forth above, the two petitions for writs of *habeas corpus* pursuant to 28 U.S.C. § 2254 are denied. Bonnett is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.,* 396 F.3d 207, 209 (2d Cir. 2005). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: November 28, 2018
      Brooklyn, New York